Raymond THOMPSON, Appellant/Cross–Appellee,

v.

FISCHER PACKING COMPANY, Appellee/Cross–Appellant,

and

Vicki Newberg, Acting Director of the Special Fund, W. Bruce Cowden, Jr., Administrative Law Judge, and Workers' Compensation Board, Appellees/Cross–Appellees.

Nos. 93–CA–002684–WC and 93–CA–002887–WC.

Court of Appeals of Kentucky.

Aug. 26, 1994.

Ray H. Stoess, Jr., Louisville, for appellant/cross appellee, Raymond Thompson.

Eric M. Jensen, Louisville, for appellee/cross appellant, Fischer Packing Co.

Mark Webster, Louisville, for appellee/cross-appellee, Vicki G. Newberg, Acting Director of the Special Fund.

Before COMBS, SCHRODER and WILHOIT, JJ.

*OPINION*

SCHRODER, Judge:

This is a petition for review, brought by appellant, Raymond Thompson (Thompson), and cross-appellant, Fischer Packing Company (Fischer Packing), of a Workers' Compensation Board's (Board) decision of October 15, 1993. The issues on appeal concern whether any portion of Thompson's award for total disability should have been reduced by the percentage of disability attributable to a noncompensable, independent and concurrent cause, and whether the finding of any compensable disability is supported by substantial evidence. After reviewing the record and applicable authorities, we affirm both the Administrative Law Judge (ALJ) and the Board.

The essential facts are not in dispute and are as follows. Thompson began working for Fischer Packing in 1956, during which time he was periodically exposed to ammonia leaks (Thompson estimates about 100 total). Perhaps the most significant leak occurred on June 26, 1989, when ammonia leaked from a refrigeration unit, and Thompson required oxygen therapy. Thereafter, Thompson periodically returned to work, but his last exposure was in March 1992. Also relevant is the appellant's history of smoking one to two packages of cigarettes per day for forty years before quitting between 1985 and 1989. He complains of coughing, sleeping difficulty, and breathing problems in hot weather. He currently takes breathing medication four times a day.

The ALJ correctly treated this claim as one for occupational disease and found Thompson totally disabled. However, regarding causation, the ALJ relied on the testimony of Dr. John David O'Brien and found that his disability was the result of both chronic low level exposure to ammonia and Thompson's long history of smoking:

[M]edical evidence introduced by the Plaintiff indicates that the Plaintiff suffers from chronic obstructive pulmonary disease which has been exacerbated in part by the ammonia exposure as well as small airway disease. It is clear, however, from the Plaintiff's deflated FEV1 values, that the Plaintiff's most severe problem is his his [sic] obstructive chronic pulmonary disease which was caused most likely by his long history of cigarette smoking and which was aggravated in part by the Plaintiff's long term exposure to ammonia. The Plaintiff also has chronic airway disease which prohibits him from being exposed to any irritants including ammonia.

The ALJ then determined that 30% of Thompson's occupational disability resulted from the ammonia exposure, and was therefore compensable, while 70% was due to chronic obstructive pulmonary disease (COPD) caused by cigarette smoking, and as a corollary, was noncompensable. Pursuant to *Teledyne–Wirz v. Willhite*, Ky.App., 710 S.W.2d 858 (1986), the award runs for the duration of Thompson's disability.

The Board affirmed the ALJ's decision, noting that the ALJ has great leeway in translating medical evidence even if no physician offered an opinion as to the causative apportionment of smoking and ammonia exposure. The Board further held that the award of total disability was supported by the opinions of Drs. Anderson and O'Brien. We affirm for the same reasons.

We first address the cross-appeal. The evidence certainly supports the findings 1) of total disability and 2) that some of the disability resulted from ammonia exposure at Fischer Packing. *Wolf Creek Collieries v. Crum*, Ky.App., 673 S.W.2d 735 (1984).

Thompson is 60 years old with a third grade education, and no specialized training. Dr. Anderson recommended he not return to his job at Fischer Packing and assessed 30–45% functional impairment. His highest FEV1 value was 59%. It was within the ALJ's sole discretion to translate this evidence into a finding of total disability. *Paramount Foods, Inc. v. Burkhardt*, Ky., 695 S.W.2d 418 (1985). That finding is supported by substantial evidence. *Special Fund v. Francis*, Ky., 708 S.W.2d 641 (1986).

Moreover, Drs. O'Brien and Anderson expressed that Thompson's hypersensitive airways syndrome was due to both smoking and ammonia exposure. Again, this evidence is substantial and supports the finding that some of Thompson's disability is work-related and compensable.

As to Thompson's appeal, again, the ALJ's carve-out for the noncompensable disability due to cigarette smoking is supported by substantial evidence. Both Drs. Anderson and O'Brien found COPD caused by a combination of ammonia gas and cigarette smoking, and the ALJ relied on the reduced FEV1 values to conclude that the multi-causal COPD was Thompson's most severe impairment. While no physician ventured to apportion how much each cause contributed to the impairment, the ALJ has great leeway in making just such a determination. *Seventh Street Road Tobacco Warehouse v. Stillwell*, Ky., 550 S.W.2d 469 (1976). We also point out that had the ALJ so chosen, he could have relied on the opinions of Drs. Broudy and Lane to find the disability wholly noncompensable since these two doctors opined that exposure to ammonia resulted in a transient exacerbation of COPD but no permanent impairment. The evidence certainly does not compel a finding in Thompson's favor. *Burkhardt, supra.*

We further note that Thompson's reliance on *Newberg v. Reynolds*, Ky., 831 S.W.2d 170 (1992) is misplaced. That was a claim for disability based on coal workers' pneumoconiosis, in which it could not be determined from the medical evidence how much coal dust exposure and cigarette smoking contributed, respectively, to the miner's impairment. The Supreme Court held that as long as coal dust exposure is a medically significant cause of the miner's impairment, all disability is compensable. However, as pointed out by the Board, *Reynolds* applies strictly to claims governed by KRS 342.732, not KRS 342.316, as we have here.

For the reasons stated above, the opinion of the Workers' Compensation Board is affirmed.

All concur.